FIRST DIVISION

1-07-2506

No. 1-07-2506

THE PEOPLE OF THE STATE OF ILLINOIS,  )  Appeal from the
                                      )   Circuit Court
          Plaintiff-Appellee,         )   of Cook County.
                                      )
v.                                    )   No. 05 CR 25441
                                      )
WARDELL NUGEN,                        )   Honorable
                                      )   Lon William Shultz,
          Defendant-Appellant.        )   Judge Presiding.

<u>MODIFIED UPON DENIAL OF REHEARING</u>

JUSTICE LAMPKIN delivered the opinion of the court:

A jury found defendant Wardell Nugen guilty of first degree murder.  He was sentenced to 50 years' imprisonment.  On appeal, defendant contends he was denied his right to a fair trial where the jury was not read Illinois Pattern Jury Instructions, Criminal, No. 2.04 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 2.04), pertaining to his constitutional right not to testify.  Defendant also contends the admission of an out-of-court statement violated the sixth amendment confrontation clause.  Defendant further contends his sentence is excessive in light of mitigating factors.  We affirm.

FACTS

On September 22, 2005, defendant stabbed the victim, Gary Hastings, in retaliation for taking his bike without paying for it.  Salahuddin Muhammed witnessed the stabbing.  The victim died as a result.

DECISION

I. Jury Instruction

Defendant contends his trial was unfair because the trial court failed to read his requested jury instruction, IPI Criminal 4th No. 2.04, at the

close of trial.

A defendant is constitutionally guaranteed the right to an impartial jury trial. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art I, §8.

We note defendant did not properly preserve his contention for review because, although he included the issue in his posttrial motion, defendant did not object to the alleged error at trial. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). Notwithstanding, Supreme Court Rule 451(c) permits review of "substantial defects" in jury instructions "if the interests of justice require." 210 Ill. 2d R. 451(c); see People v. Piatkowski, 225 Ill. 2d 551, 564, 870 N.E.2d 403 (2007). Rule 451(c) is applied the same way as the plain error rule in conjunction with Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). The plain error rule permits review of forfeited errors where the evidence was closely balanced or the error substantially denied the defendant's right to a fair trial. People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E. 2d 467 (2005). Plain error review necessitates the initial finding of error. Piatkowski, 225 Ill. 2d at 565.

IPI Criminal 4th No. 2.04 says "[t]he fact that [(a) (the)] defendant[s] did not testify must not be considered by you in any way in arriving at your verdict." The Committee Note advises "[t]his instruction should be given *only* at the defendant's request and, then, it *must* be given." (Emphasis in original.) Illinois Pattern Jury Instructions, Criminal, No. 2.04, Committee Note, at 77 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 2.04, Committee Note).

There is no dispute defendant requested the instruction. At the instructions conference, the State submitted IPI Criminal 4th No. 2.04. The trial court said it would provide the instruction only if requested by defendant. Defense counsel said he wanted the instruction and the court agreed to give it. Then, at the close of evidence, the trial court failed to

2

read IPI Criminal 4th No. 2.04 while otherwise instructing the jury.

We find the trial court's failure to read the instruction was an oversight that did not amount to error. Despite the court's failure to read the instruction in conjunction with the other admitted instructions, the jury was *given* IPI Criminal 4th No. 2.04 as the Committee Note advises. The jury was given a physical copy of IPI Criminal 4th No. 2.04 when it retired to the jury room for deliberations. *Cf*. People v. Bryant, 391 Ill. App. 3d 1072, 1084, 909 N.E.2d 391 (2009) (error where the court orally advised the jury regarding a statutorily required jury instruction, but failed to physically provide the jury with the instruction during deliberations). The physical instruction was returned in the packet of jury instructions containing the jury's signed verdict form. Notably, at defendant's motion for a new trial, the court said:

"I have not reviewed the transcripts [from trial], but I accept the representation, that [the instruction] is not contained in the transcript.

Additionally, when the jury indicated that they have reached a verdict in the case, the verdict form that is signed is tendered to the deputy sheriff, per my instruction, which was done in this case. After the jury is dismissed, I instruct the deputy sheriff to bring me the remaining instructions so that I make them part of the court file. And in his case I have reviewed the jury instructions that were brought from the jury room, that I did review prior to placing them back in the court file, and it does include *** that particular instruction which is in question here. So I also know that it came from the jury room, and that they had it available during the deliberations."

Defendant cites People v. Vincent, 165 Ill. App. 3d 1023, 520 N.E.2d 913

3

(1988), contending the trial court's error was not cured "simply because the court file contained a written copy of IPI 2.04." In Vincent, the defendant's conviction was reversed where the transcript demonstrated the trial judge misstated the law while reading a jury instruction. Vincent, 165 Ill. App. 3d at 1031; see also People v. James, 255 Ill. App. 3d 516, 626 N.E.2d 1337 (1993); People v. Bland, 228 Ill. App. 3d 1080, 593 N.E.2d 639 (1992). The Vincent court ruled the inclusion of a correct copy of the instruction in the court file did not prove the jury was accurately instructed. Vincent, 165 Ill. App. 3d at 1031. The court found it important that neither party discussed the accurate instruction during the substance of their arguments. Vincent, 165 Ill. App. 3d at 1031. The court said:

"The error in this case is more significant than in cases in which an instruction important to the defense is omitted. [Citations.] Not only was the proper instruction not given, but the jury was misinformed as to the burden of proof." Vincent, 165 Ill. App. 3d at 1031.

The instant case is distinguishable. Here, the jury was accurately instructed. The jury was not misinformed regarding defendant's right not to testify. Rather, the jury was repeatedly admonished it could not consider defendant's privilege against self-incrimination in rendering a verdict.

Initially, the jury was advised of defendant's right to choose not to testify prior to *voir dire* in accordance with the Zehr principles and Supreme Court Rule 431(b). See 177 Ill. 2d R. 431(b).[1] Specifically, the court

---

[1]We note the applicable version of Rule 431(b) was that amended in 1997, in which, "[i]f requested by the defendant," the trial court was required to ask the venire if each member understood and accepted the Zehr principles. 177 Ill. 2d R. 431(b).

4

advised the venire:

"The charge in this case is contained in what is referred to as an indictment. An indictment is not to be considered as any evidence against the defendant, nor does the law allow you to infer any presumption of guilt against the defendant simply because he is named in the indictment. The indictment is merely a formal way in which a defendant is placed upon trial. Under the law, a defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the proceedings and is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case.

A defendant is not required to prove his innocence nor is he required to present any evidence on his own behalf. He may rely on the presumption of innocence. If the defendant chooses not to testify, which is his Constitutional right, the fact that the defendant does not testify may not be considered by you in any way in arriving at your verdict.

\* \* \*

I shall be instructing you on the law throughout these proceedings and again at the conclusion of the case. You shall be bound by the oath you will take as jurors prior to hearing this case to follow the law as I give it to you. You may not disregard the law as given to you by me and apply what you either individually or collectively believe the law should be."

In addition, defense counsel reminded each juror individually that defendant may or may not testify in the case. Defense counsel then asked each venire member whether he or she would hold it against defendant if he chose not to testify. Two venire members, Cook and Mennes, were dismissed when their answers demonstrated a hesitation to withhold judgment in the event defendant did not testify. When Cook answered that he could not say whether he would hold defendant's decision not to testify against defendant until hearing the evidence, the trial court said, in the presence of the venire:

"I would advise you again, as I stated earlier, that if you're selected as a juror, if the defendant does not testify in the case, you will receive an instruction of law at the conclusion of the case that you would be obligated to follow, and that is the fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

Moreover, the State reminded the venire the judge would provide instructions on the law. The State asked, "Is there anyone who won't be able to follow the law?" There was no response. The State added, "Is there anyone who won't follow the law even if you flat out disagree with it?" There was no response.

Therefore, while the jurors were not read IPI Criminal 4th No. 2.04 prior to retiring to the deliberation room, they repeatedly heard the substance of the instruction during the *voir dire* process and were given the physical copy of the law in the packet of instructions taken to the deliberation room. Besides, IPI Criminal 4th No. 2.04 was part of the law which the jurors swore to follow. *Cf.* People v. Ramirez, 98 Ill. 2d 439, 450, 457 N.E.2d 31 (1983) ("the trial judge's refusal to instruct the jury that they were not to consider the defendant's silence constituted reversible error"). No error occurred.

Even assuming, *arguendo*, the trial court erred in failing to read IPI Criminal 4th No. 2.04, defendant cannot demonstrate he suffered reversible error. Automatic reversal is warranted in limited circumstances where the error is deemed "structural." People v. Glasper, 234 Ill. 2d 173, 190 (2009). A structural error is "a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " Glasper, 234 Ill. 2d at 197-98, quoting Herron, 215 Ill. 2d at 186.

The record before us demonstrates no structural error existed. The jury was repeatedly admonished its verdict could not be influenced by defendant's decision not to testify. Moreover, the threat of bias was extinguished when the two jurors who hesitated to follow the law were dismissed. The remaining jurors swore to apply the law as given to them. We must presume the jury followed the law and instructions given. People v. Sutton, 353 Ill. App. 3d 487, 501, 818 N.E.2d 793 (2004).

The supreme court recently held a trial court's error in failing to question a jury in accordance with Supreme Court Rule 431(b)(4) was harmless. Glasper, 234 Ill. 2d at 199-200. Rule 431(b)(4) provides the defendant's decision not to testify cannot be held against him. 177 Ill. 2d R. 431(b)(4). We recognize there is no Zehr challenge here; however, the supreme court's reasoning informs our conclusion here that defendant received a fair trial.

The supreme court highlighted that Rule 431(b)(4), though designed to ensure defendants have a fair jury trial, is not a constitutional right "indispensable to a fair trial." Glasper, 234 Ill. 2d at 196. The supreme court found support in the rule itself, which, at the time, required questioning only if requested by the defendant. The Glasper court further concluded it would be inconsistent to impose reversible error on a violation of Rule 431(b)(4) when the supreme court has repeatedly held Doyle violations do not require automatic reversal. Glasper, 234 Ill. 2d at 198 ("automatic

7

reversal is not required when a prosecutor mentions a defendant's post-<u>Miranda</u> silence and commits a <u>Doyle</u> violation").

Similarly here, IPI Criminal 4th No. 2.04 is discretionary and may only be given if requested by the defendant. IPI Criminal 4th No. 2.04, Committee Note. Moreover, where the instruction is based on a defendant's right against self-incrimination, we agree with the supreme court's well-reasoned conclusion in <u>Glasper</u> that it would be inconsistent to treat the instant instructional error more harshly than a <u>Doyle</u> violation.

The <u>Glasper</u> court relied on federal appellate decisions to find the error there could be considered harmless where the evidence against the defendant was overwhelming. <u>Glasper</u>, 234 Ill. 2d at 202, citing <u>United States v. Brand</u>, 80 F.3d 560 (1st Cir. 1996); <u>Lewis v. Pinchak</u>, 348 F.3d 355 (3d Cir. 2003); <u>Beathard v. Johnson</u>, 177 F.3d 340 (5th Cir. 1999); <u>Finney v. Rothgerber</u>, 751 F.2d 858 (6th Cir. 1985); <u>Hunter v. Clark</u>, 934 F.2d 856 (7th Cir. 1991); <u>United States v. Soto</u>, 519 F.3d 927 (9th Cir. 2008) (finding a <u>Carter</u> error may be considered harmless, <u>i.e.</u>, when a court fails to give a defendant's requested "no-adverse inference" instruction in violation of the defendant's fifth amendment). Our courts have similarly held instructional errors may be considered harmless where the outcome of trial would not have been different had the proper instruction been given. <u>People v. Furdge</u>, 332 Ill. App. 3d 1019, 774 N.E.2d 415 (2002), citing <u>People v. Kirchner</u>, 194 Ill. 2d 502, 557, 743 N.E.2d 94 (2000). In <u>People v. Carreon</u>, 225 Ill. App. 3d 133, 587 N.E.2d 532 (1992), this court held the trial court erred in precluding inquiry into venire bias concerning the defendant's privilege against self-incrimination. <u>Carreon</u>, 225 Ill. App. 3d at 143. This court concluded the error may be harmless. <u>Carreon</u>, 225 Ill. App. 3d at 143.

Based on the record before us, we find that the instant, *arguendo*, error is harmless because the evidence overwhelmingly supports the jury's verdict.

Two main witnesses testified for the State, Muhammad and Louis Turner.

Muhammad testified he was with the victim at a warming center for the homeless at about 9 a.m. on the day in question. The warming center was located at 60th Street and Ashland Avenue, Chicago, Illinois. The victim had a bike with him at the time. Muhammad knew the bike belonged to defendant. Muhammad was friends with both defendant and the victim. Muhammad and the victim left the warming center to go to a soup kitchen across the street for breakfast. Muhammad saw defendant in the dining room and they exchanged greetings. Muhammad sat down next to defendant at a table and the victim sat across the table. During their conversation, Muhammad asked defendant for his newspaper. Defendant refused to give the newspaper to Muhammad, saying it was old. After breakfast, Muhammad and the victim left the soup kitchen to return to the warming center.

Muhammad and the victim walked eastbound across the street and began to walk southbound when Muhammad heard footsteps quickly approaching. Muhammad turned around and saw defendant. Defendant walked to Muhammad's right side, placing his arm around Muhammad. The victim was walking on Muhhamad's left side. Defendant said something to the victim about his bike. The victim indicated he intended to return the bike. Defendant then reached across the front of Muhammad with something wrapped inside of a newspaper and stabbed the victim. The victim grabbed his side and had a "funny look on his face." Muhammad jumped back and told defendant he was a "crazy a-- motherf-----." The victim moved to the west side of the street to get away from defendant. Defendant danced a "little jig" and said something like "I told you I was gon' get that motherf-----."

Defendant ran to the warming center and Muhammad walked over to the victim. The victim told Muhammad defendant "stuck him." Muhammad lifted the victim's shirt to examine the wound. Muhammad then saw defendant walking down

9

the street with the bike the victim had earlier. Muhammad also saw defendant carrying the newspaper and a knife approximately 12 inches long. Defendant fled on the bike. Muhammad ran into the warming center and told someone to call 911. Muhammad immediately returned to the victim with a towel, which he placed under the victim's head. The victim was on the western sidewalk at the time. An ambulance and the police arrived almost immediately. Muhammad spoke to the police. He told the police defendant stabbed the victim. Muhammad later identified defendant in a police lineup and provided a handwritten statement.

On cross-examination, Muhammad testified he left the area for approximately one or two hours after speaking to the police immediately after the incident. He could not recall where he went during that time. The only blood Muhammad saw was located on the ground where the victim was found. Muhammad admitted he pled guilty to unlawful use of a weapon by a felon in 1994.

Turner[2] testified he was at the soup kitchen on the day in question. Defendant sat down at a table with him. Muhammad and the victim were also at the soup kitchen. Defendant told Turner the victim had defendant's bike, which the victim had not paid for. Turner witnessed defendant and the victim engage in a heated argument over the bike. Then, Muhammad and the victim left the soup kitchen. When defendant finished his breakfast, he told Turner it was time for "retribution." Turner inquired further and defendant said he was "gon' kill that n-----." Turner advised defendant that his threatened action was not worth a disagreement over a bike. Defendant showed Turner a knife he had under his coat. The knife was protruding from a case. Turner estimated the knife was about nine inches long. Defendant said he was "gon' get him."

---

[2]He admitted he has an alias of Louis Johnson.

Defendant retrieved a gym bag and a newspaper and left the soup kitchen.

According to Turner, about 15 minutes after defendant left, a "guy" ran into the soup kitchen saying a "boy" had been stabbed. When Turner asked for clarification, the individual said defendant had stabbed the victim. As a result, Turner ran outside and saw the victim on the west side of the street. Turner saw Muhammad standing nearby. A paramedic was assisting the victim. Turner relayed the events to the police on the scene. Later, Turner identified defendant in a police lineup and provided a handwritten statement.

Turner admitted he had a prior conviction for aggravated criminal sexual assault and had pled guilty for failing to register as a sex offender. Turner said he testified before the grand jury as well and advised the Grand Jury that he used both names, Louis Johnson and Louis Turner.

The investigators did not recover a knife, a carrying case, a bike, a gym bag, or a newspaper. There were no bike tracks or footprints indicating someone performed a dance found at the scene. There was no evidence of a blood trail from the east side of the street where the victim was stabbed to the west side where the victim was ultimately found. There was a red stain that appeared to be blood found on the western sidewalk. The presumptive blood spot was swabbed and collected; however, the sample was never tested. Pursuant to the information given by Muhammad and Turner, the police issued an investigative alert for defendant. Defendant was arrested on October 4, 2005, at 1458 West 72nd Street, Chicago, Illinois. No knife, bike, or duffel bag was recovered.

Wendy Lavezzi, an assistant medical examiner, testified she performed the victim's autopsy on September 26, 2005. The victim had a stab wound to his lower left chest and abrasions consistent with falling to the ground. The wound revealed an approximately eight-inch blade was used in the stabbing. No

11

trace evidence of newspaper was found in the wound. According to Lavezzi, the type of injury the victim suffered, namely, to his aorta, typically does not produce a lot of blood. Rather, an aorta injury generally bleeds into the abdomen where it collects. Lavezzi concluded the victim died of the stab wound.

Lavezzi testified the victim's blood revealed a small presence of ethanol. However, because the autopsy was not performed until four days after the victim died, the level of ethanol was not indicative of the level at the time of the victim's death. Lavezzi also noted a small presence of a metabolite of cocaine in the victim's blood; however, there was no way to tell when or how much cocaine was ingested.

The evidence demonstrated defendant was angry the victim had defendant's bike and intended to make the victim "pay." Shortly after the victim and Muhammad left the soup kitchen, defendant left with an approximately 9- to 12-inch-long knife. Defendant ran up and then fatally stabbed the victim with his newspaper-wrapped knife and fled on his bike. The victim's injuries were consistent with being stabbed with an approximately eight-inch- long blade and falling on the sidewalk.

Defendant contends the instructional error was prejudicial because the evidence was not overwhelming but closely balanced, as demonstrated by the conflicting testimony. The jury, however, heard all of the evidence, weighed it, and entered a guilty verdict. It is the jury's function to assess the credibility of witnesses, weigh the testimony, and resolve conflicts and inconsistencies in the evidence. People v. Evans, 209 Ill. 2d 194, 211, 808 N.E.2d 939 (2004). We will not question the jury's determination.

Defendant further contends the length of time the jury deliberated demonstrates the evidence was closely balanced. The jury began deliberations at 11 a.m. At 1:50 p.m., the jury sent a note requesting the police report

containing Muhammad's statement. The parties agreed with the court's suggested response that the police reports were not admitted into evidence and should not be considered. The jury was directed to continue deliberations. At 3:45 p.m., the jury sent a note requesting Muhammad's trial transcript "when he testified about the stabbing and events directly afterward" in order "to clear up some confusion." The parties agreed with the court's suggested response that the transcripts were not available. The jury was directed to continue deliberations. At 7 p.m., over the defense counsel's objection, the jury was sequestered for the night. The jury resumed deliberations at 9 a.m. the following morning. At 11:15 a.m., the jury sent a note indicating it was deadlocked 11 to 1 without saying which way the jury was split. The court denied defense counsel's request for a hung jury or a mistrial. The court denied the State's request for a Prim instruction. The court simply instructed the jury to continue deliberations. The jury returned its verdict at 12:20 p.m.

We reject the general premise a lengthy deliberation necessarily means the evidence is closely balanced. We recognize People v. Ehlert, 274 Ill. App. 3d 1026, 1035, 654 N.E.2d 705 (1995), seemingly stands for that proposition where the jury was deadlocked for three days. However, in Ehlert, the evidence was so conflicting the State virtually conceded it could not prove its case based upon the charge advanced. Here, the jury's notes indicate there was confusion regarding Muhammad's police statement and testimony. The jury ultimately resolved its confusion and rendered the verdict.

Although not directly on point, our decision is supported by People v. Casillas, 195 Ill. 2d 461, 749 N.E.2d 864 (2000). In Casillas, the supreme court applied a totality of the circumstances test to determine whether the defendant received a fair trial where the jury was not given a written

13

instruction as to the presumption of innocence and the burden of proof. Casillas, 195 Ill. 2d at 474. Neither the State nor the defense tendered the appropriate instruction, IPI Criminal 4th No. 2.03. The supreme court ruled the trial court erred in failing to give the instruction *sua sponte*. Casillas, 195 Ill. 2d at 474. However, the court said "the trial court's failure to give this written instruction does not automatically result in a finding that defendant's constitutionally protected right to a fair trial has been violated." Casillas, 195 Ill. 2d at 474, citing Kentucky v. Whorton, 441 U.S. 786, 789, 60 L. Ed. 2d 640, 643, 99 S. Ct. 2088, 2090 (1979). The supreme court applied the totality of the circumstances analysis used in Whorton and adopted by the supreme court in People v. Layhew, 139 Ill. 2d 476, 564 N.E.2d 1232 (1990). The analysis requires a reviewing court to "look at all the circumstances including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming and any other relevant factors" to determine whether a defendant was denied his right to a fair trial. Casillas, 195 Ill. 2d at 474.

As outlined, the totality of the circumstances in the instant case demonstrate defendant received a fair trial. The jury was repeatedly and accurately instructed during *voir dire* and was given a physical copy of the instruction to reference during deliberations. Moreover, the overwhelming evidence placed defendant at the warming center looking for retribution. He settled the score by fatally stabbing the victim and retrieving the disputed bike.

II. Confrontation Clause

Defendant contends his confrontation clause rights were violated where the State introduced an unnamed individual's hearsay statement. Specifically, defendant contends the confrontation error occurred when Turner testified that a "guy" ran into the soup kitchen and said a "boy" had been stabbed. Then,

14

when Turner asked for clarification, the "guy" said defendant was the offender.

Defendant concedes he did not preserve his contention for review because he did not object to the admission of the statement at trial and did not include the issue in a posttrial motion. See Enoch, 122 Ill. 2d at 186. Defendant, however, requests that we review the contention under the doctrine of plain error. As stated, a reviewing court may review a forfeited error affecting a substantial right where (1) the evidence is "so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence"; or (2) the error was so serious it denied the defendant a fair trial. Herron, 215 Ill. 2d at 178-79. Because defendant's contention involves the alleged violation of a constitutional right, we review the claim. See People v. Sample, 326 Ill. App. 3d 914, 919, 761 N.E.2d 1199 (2001).

The sixth amendment confrontation clause ensures a defendant's right to confront witnesses testifying against him through cross-examination. U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8. The hearsay rule generally prohibits the admission of an out-of-court statement offered for the truth of the matter asserted therein. People v. Spicer, 379 Ill. App. 3d 441, 449, 884 N.E.2d 675 (2007).

Defendant contends the statement at issue was hearsay admitted in violation of the confrontation clause. The State contends the statement was not hearsay because it was offered to demonstrate why Turner left the soup kitchen to go outside. See People v. Gonzalez, 379 Ill. App. 3d 941, 954 (2008) (an out-of-court statement offered to show the effect on the listener is not hearsay). We agree.

Turner testified regarding his conversation with defendant before defendant left the soup kitchen. Turner knew defendant left the soup kitchen armed with a knife, seeking retribution for the victim having taken his bike.

15

Fifteen minutes later, Turner ran outside and found the victim on the ground with a stab wound. Turner ran outside because, after the nontestifying witness said someone had been stabbed, the nontestifying witness clarified that defendant was the offender. The statement was offered to show its effect on Turner. The statement was not admitted as substantive evidence. The statement was briefly referenced in the State's rebuttal argument; however, the substance of the statement was not argued. Specifically, the State said "[t]ime disparity is when [Turner's] at the soup kitchen and he hears about Old Boy getting stabbed. I believe that's what he said. That's what he heard about it [sic]." Reading the State's brief reference in context demonstrates the State was not using it as substantive evidence.

Defendant contends Turner's testimony regarding the nontestifying witness' follow-up statement naming defendant was unnecessary to demonstrate why Turner left the soup kitchen and was therefore offered for the truth of the matter asserted. We disagree. The statement directly affected Turner's behavior because Turner did not attempt to leave the soup kitchen until he asked for the identity of the "guy" and learned it was defendant. Given Turner's prior interaction with defendant, the follow-up statement, in conjunction with the initial statement, was admissible to explain why Turner left the soup kitchen to investigate the aftermath of the offense. Accordingly, we find the overall statement was not hearsay, and therefore no confrontation error occurred. Crawford v. Washington, 541 U.S. 36, 60 n.9, 158 L. Ed. 2d 177, 198 n.9, 124 S. Ct. 1354, 1370 n.9 (2004) (the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); People v. Peoples, 377 Ill. App. 3d 978, 983, 880 N.E.2d 598 (2007) ("[a]dmissible nonhearsay does not implicate the confrontation clause").

Even assuming, *arguendo*, that the combined statement was hearsay

16

admitted in violation of the confrontation clause, reversal is not automatically warranted. Sample, 326 Ill. App. 3d at 924. Rather, confrontation errors are considered harmless where "there is 'no reasonable possibility the verdict would have been different had the hearsay been excluded.' " Sample, 326 Ill. App. 3d at 925, quoting People v. McCoy, 238 Ill. App. 3d 240, 249, 606 N.E.2d 245 (1992).

Again, assuming, *arguendo*, the statement was a confrontation error, we find the alleged error did not constitute plain error. Based on the evidence, there is no reasonable probability the jury would have acquitted defendant if the combined statement at issue had been excluded. The substance of Turner's contested testimony is that an unnamed individual said defendant stabbed the victim. Even with the exclusion of that statement, the remaining evidence overwhelmingly supported the jury's guilty verdict. The evidence demonstrated defendant and the victim exchanged contentious words over the victim having defendant's bike. According to Turner, when Muhammad and the victim left the soup kitchen, defendant expressed his intent for "retribution," explaining he "gon' kill that n-----." Defendant flashed Turner his long-blade knife. Defendant left with the knife and a newspaper and said he was "gon' get" the victim. Muhammad said defendant approached him and the victim and reached across the front of Muhammad to stab the victim. Muhammad then saw defendant flee with his bike and a long-blade knife wrapped in a newspaper. The victim died of the stab wound. The evidence was not so closely balanced that the jury's verdict may have resulted from the admission of the alleged hearsay and not from the evidence. Moreover, the alleged error was not so serious as to deny defendant a fair trial.

We need not address defendant's alternate contention that his counsel was ineffective for failing to preserve the issue. Even if trial counsel objected to and included the error in a posttrial motion, the outcome of the

17

trial would have been the same.

III. Sentence

Defendant contends his 50-year sentence is excessive in light of mitigating factors, namely, his lack of a felony criminal record and his potential for rehabilitation.

A trial court's sentence is entitled to great deference and weight and may not be disturbed absent an abuse of discretion. People v. Perruquet, 68 Ill. 2d 149, 154, 368 N.E.2d 882 (1977). The sentence must be balanced between the seriousness of the offense at issue and the potential for the defendant's rehabilitation. See Ill. Const. 1970, art. I, §11. The trial court weighs the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. People v. Stacey, 193 Ill. 2d 203, 209, 737 N.E.2d 626 (2000). A reviewing court may not substitute its judgment for that of the trial court simply because it would have weighed those factors differently. Stacey, 193 Ill. 2d at 209. Moreover, a sentence within the statutory limits will not be considered excessive unless it greatly varies with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. Stacey, 193 Ill. 2d at 210.

A first degree murder conviction carries a sentence of not less than 20 years and not more than 60 years. 730 ILCS 5/5-8-1(a)(1) (West 2004). Defendant's 50-year prison term is within the permissible statutory range.

Moreover, the record demonstrates the sentence is not manifestly disproportionate to the nature of first degree murder. The trial court considered the mitigating and aggravating evidence presented before determining the appropriate sentence. At the sentencing hearing, the court said it considered the seriousness of the offense, the mitigating and aggravating statutory factors, the attorneys' arguments, defendant's presentence investigation report, defendant's criminal history, defendant's

18

potential for rehabilitation, and the deterrence value of the sentence. Specifically in reference to defendant's criminal history and potential for rehabilitation, the court said:

"In looking at the factors that I've referenced, and in considering the information contained in the presentence investigation report, I would note that defendant obviously is in his mid forties, and as both sides have stated, his criminal history derives primarily from Wisconsin. And beginning at what is, at least reported to me, in 1998, there are battery convictions, intimidating a victim, additional battery convictions. Although counsels wish to, I suppose, minimize them in terms of how they relate, they are important to the Court to determine the type of life the defendant leads and how likely it is that he's going to assault other individuals when he gets into some particular disagreement with them.

I find that the fact that he has, as least three that have been reported, battery and intimidating a victim, and criminal damage to property incidents, that it indicates to this Court that the defendant is not able to control himself when something arises that he has disagreement with and finds himself acting out violently towards those around him. So that that [sic] is the significance I see to the criminal history that is before me.

* * *

Your lawyer has stated that your background is such that this is your first felony conviction, and unfortunately in this business sometimes one can see a progression from more minor offenses up to the greater offenses, the greatest being first d[e]gree murder; but sometimes people come into the court and they

19

start right out at the top, which you have done in this case, and that's taking the life, without justification, of Gary Hastings, on the plan that you formulated for the reason--or the reasons that you had within your own mind.

The Court believes that a sentence other than that which the Court is going to impose would deprecate the seriousness of the offense. And the Court does believe at this point in time, and for the likely future, that you do pose a danger of physical violence to those around you, if they cross your path, or they upset you in any way, shape or form. I do not believe you have the ability to control yourself or the emotions that you have within you; and that because of those facts, that you are an imminent danger to those around you. I would strongly suggest while you're in the Department of Corrections, if made available to you, that you avail yourself of any anger management or counseling programs that might be available, so that if and when you are released to the public you do not find yourself getting into these altercations again, where you have to resort to this type of deadly force to make your point, so to speak."

The record expressly demonstrates the trial court considered defendant's criminal history and potential for rehabilitation while fashioning its sentence. "[I]t is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it; and the burden is on the defendant to affirmatively show the contrary." People v. Garcia, 296 Ill. App. 3d 769, 781, 695 N.E.2d 1292 (1998). The instant defendant has failed to meet that burden. The trial court did not abuse its discretion in sentencing defendant.

CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

HALL, P.J., and GARCIA, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

WARDELL NUGEN,

Defendant-Appellant.

No. 1-07-2506

Appellate Court of Illinois
First District, FIRST DIVISION

March 8, 2010

Justice Bertina E. Lampkin authored the modified opinion of the court:

Presiding Justice Hall and Justice Garcia concur.

Appeal from the Circuit Court of Cook County.
The Hon. Lon William Shultz, Judge Presiding.

**COUNSEL FOR APPELLANT**
Michael J. Pelletier, State Appellate Defender, Chicago, IL 60601
Patricia Unsinn, Deputy Defender
OF COUNSEL: Melinda Grace Palacio

**COUNSEL FOR APPELLEE**
Anita Alvarez, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: James E. Fitzgerald, Veronica Calderon Malavia,
Miles J. Keleher and Ugo H. Buzzi

1-07-2506