2020 IL App (1st) 172496
No. 1-17-2496

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SIXTH DIVISION
February 7, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 15 CR 3047 |
| | ) | |
| RENE SALAZAR-CORONA, | ) | |
| | ) | Honorable Erica Reddick, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held:* Because this case was not closely balanced we will not review defendant's unpreserved claim that the trial court improperly allowed prior consistent statements into evidence; defendant's sentence was not excessive where it was well within the sentencing range and the trial court considered all the factors in mitigation; and defendant's fee claims should be remanded for him to file a motion with the circuit court. Judgment and sentence affirmed; remanded for fee issue only.

¶ 2    Defendant, Rene Salazar-Corona, was convicted of criminal sexual assault and sentenced to eight years in prison. On appeal, defendant contends that: (1) the trial court erred when it allowed the State to admit multiple prior consistent statements of the victim into evidence, or

alternatively, trial counsel was ineffective for failing to object to each of the prior consistent statements; (2) defendant's sentence was excessive; and (3) the trial court improperly assessed charges against defendant. For the following reasons, we affirm the judgment and sentence of the trial court, and remand only the issue of fees to the circuit court.

¶ 3                                    BACKGROUND

¶ 4      At trial, the following evidence was presented. On January 18, 2015, the victim, A.D., attended a work party at the Hyatt Regency in Chicago with her boyfriend, Paul Green. Green worked as a bar manager at a restaurant called Bacinos. Prior to the party, A.D. met Green at a bar, Harding Tavern, to watch a football game. A.D. testified that she drank two craft beers at Harding Tavern. They then went to another bar, Emerald Loop, where A.D. drank two or three more beers and had one or two shots of liquor. Green and A.D. then left Emerald Loop to go to the party at the Hyatt Regency.

¶ 5      A.D. testified that she felt intoxicated by the time she arrived at the party, which was in a suite at the hotel. There were about 12-15 people at the party, but she only knew Green and one other woman. A.D. testified that she did not recall drinking more alcohol at the party, but she had difficulty remembering the events of that portion of the night. The next thing A.D. remembered was that she was in a bedroom that was connected to the suite. A.D. could not recall how she got into the bedroom.

¶ 6      A.D. testified that the first thing she saw when she woke up was a naked man, who she did not know, on top of her. A.D. stated that the man's penis was "brushing" against her vagina. A.D. was not wearing any clothes. A.D. put her hands on the man's chest and pushed him away. The man was not wearing a condom.

¶ 7    A.D. testified that she found her clothes and went into the bathroom. She put her clothes on, then went to find Green, who was asleep in another room. She could not remember what she said to Green verbatim but remembered telling him that somebody raped her. A.D. testified that Green was initially confused but left the room and A.D. later saw him yelling at and fighting with defendant.

¶ 8    A.D. testified that she called 911. An ambulance arrived, and A.D. went to the hospital, where she spoke with a nurse, a doctor, and the police. A criminal sexual assault kit was completed at the hospital. She was given antibiotics, Advil, a prescription for an anti-HIV medication, and the morning-after pill to prevent pregnancy.

¶ 9    Green testified that he worked with defendant at Bacinos. Green was the bar manager, and defendant was the line cook. Green testified that on January 18, 2015, he went to Harding Tavern to watch a football game. A.D. met him there, and he saw her drinking craft beer. They then went to Emerald Loop, where A.D. drank five to six beers and two shots of liquor. They left Emerald Loop somewhere between 10 and 10:30 pm.

¶ 10    Green testified that the suite at the Hyatt Regency where the party took place had one large master bedroom with couches, and an attached second bedroom with two queen beds. Green saw that defendant was at the party. Green and A.D. continued to drink. Later in the evening, Green noticed that A.D.'s speech had become slurred and she was not making sense. She was also having trouble standing and had to lean on Green.

¶ 11    Green testified that he decided to put A.D. to bed in the attached bedroom at around 11:30 pm. He helped her into one of the beds and took her boots off. She was fully clothed. Green left the bedroom and rejoined the party, periodically checking on A.D. to make sure she did not get sick. Green did not see anyone else in the room during his checks.

¶ 12    Green testified that he continued to drink throughout the evening, and that he believed defendant took some tequila shots along with everyone else at some point. Sometime between 1:30 and 2 a.m., Green fell asleep on one of the couches in the suite.

¶ 13    Green woke up to A.D. telling him that she "just woke up to someone raping [her.]" Green went into the second bedroom and saw defendant sleeping in the second bed of that room. Green went back out to A.D. and asked what happened. Defendant then came out of the bedroom and Green began to fight with defendant. A.D. then ran past Green, and he saw her get into an ambulance at 4:30 a.m.

¶ 14    Bryan Haragan, a Bacinos employee, testified that he attended the Hyatt party with about 10 other people, all of whom he knew. Green and A.D. arrived at the party soon after Haragan did. Haragan testified that he served A.D. three shots of liquor at the party. A.D. had trouble balancing and had to lean against a table and Green for support. Her speech was slurred. Haragan saw Green take A.D. into the second bedroom and did not see her for the rest of the night.

¶ 15    Haragan testified that by 1:30 to 2 a.m., most of the partygoers had left. Haragan, Green, and a handful of others remained. Haragan went to sleep on a couch at about 3 a.m. Sometime after he laid down, he saw defendant go into A.D.'s bedroom and close the door. Around 4 or 4:30 a.m., Haragan woke up to Green chasing defendant with what appeared to be a fork. Haragan testified that he did not see A.D. and defendant speak to each other during the party.

¶ 16    Maria Cerna, a paramedic for the Chicago Fire Department, testified that at about 4:40 a.m., she received a dispatch to the Hyatt Regency for an alleged sexual assaulted. Cerna spoke with A.D., who stated that she had been sexually assault. She did not notice A.D. slurring her speech, staggering, or smelling like alcohol.

4

¶ 17    Julie Bembenista, a registered nurse at Northwestern Hospital, testified that on January 19, 2015, she treated A.D. at around 7:50 a.m. Bembenista started a criminal sexual assault kit. A.D. told her that she woke up naked and was vaginally penetrated by defendant.

¶ 18    Angela Kaeshamer, a forensic scientist with the Illinois State Police Forensic Science Center, testified that she found the DNA of two people from A.D.'s vaginal swab – A.D. and defendant.

¶ 19    Defendant testified on his own behalf, with the help of a Spanish language interpreter. He stated that he arrived at the Hyatt at 10:40 p.m. on the night in question. He drank and socialized with everyone there, including A.D. He did not know A.D. was Green's girlfriend. At some point, he saw Green walk A.D. to a bedroom. A.D. appeared drunk but was walking fine. Defendant continued to enjoy the party until about 1 or 2 a.m. Others found places to sleep, including Green. Defendant testified that at about 3 a.m., A.D. came to the doorway of the bedroom and summoned him inside. They began to kiss and remove their clothing. They had sex for ten to fifteen minutes until he ejaculated. A.D. never told him to stop. Defendant testified that A.D. was drunk during the encounter, but that he was also drunk. Defendant testified that he would not have engaged in sex with A.D. if he thought she was too drunk.

¶ 20    Defendant testified that A.D. then changed back into her clothes and left the room. She was not crying or upset. Defendant got dressed and went to sleep on the other bed. After a few minutes, Green came into the bedroom and screamed at him. He attacked defendant with a plastic fork. A.D. called an ambulance, but defendant thought it was because he was bleeding. He saw A.D. get into an ambulance as he left the hotel.

¶ 21    A.D. testified that she did not speak Spanish.

¶ 22    The jury found defendant guilty of criminal sexual assault after 14 hours of deliberation. Defendant moved for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt. The court denied the motion.

¶ 23    The trial court sentenced defendant to eight years in prison. Defendant moved for reconsideration, arguing that the sentence was excessive. The court rejected the motion. Defendant now appeals.

¶ 24                              ANALYSIS

¶ 25    On appeal, defendant contends that: (1) the trial court erred when it allowed the State to admit multiple prior consistent statements of the victim into evidence, or alternatively, trial counsel was ineffective for failing to object to each of the prior consistent statements; (2) defendant's sentence was excessive; and (3) the trial court improperly assessed certain charges against defendant.

¶ 26    Defendant's first contention is that the trial court erred when it allowed into evidence three prior consistent statements that A.D. gave to her boyfriend, a paramedic, and a nurse. Specifically, defendant complains of Green's testimony that A.D. told him she had been raped, Cerna's testimony that A.D. stated she had been sexually assaulted, and Bembenista's testimony that A.D. told her she was vaginally penetrated by defendant. The State responds that the complained-of testimony was neither objected to at trial or raised in a posttrial motion, and thus has been forfeited for review. See *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007) (to preserve claimed improper statements for review, a defendant must object to the statements both at trial and in a written posttrial motion). Defendant acknowledges that he failed to preserve this claim of error but requests this court to nevertheless review the claim under the plain error doctrine. The plain error doctrine is applicable when: " '(1) a clear or obvious error occurred and the

evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." ' *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). Here, defendant claims that the evidence was closely balanced, and thus review is warranted under the first prong of the plain error doctrine. We disagree.

¶ 27 In determining whether the closely balanced prong has been met, we must make a "commonsense assessment" of the evidence (*People v. White*, 2011 IL 109689, ¶ 139) within the context of the circumstances of the individual case (*People v. Adams*, 2012 IL 111168, ¶ 22). To prove a defendant guilty of criminal sexual assault, the State must show that (1) defendant committed an act of sexual penetration while (2) he knew that A.D. was unable to understand the nature of the act or was unable to give knowing consent to the sexual penetration. See 720 ILCS 5/11-1.20(a)(2) (West 2014). There is no question that defendant sexually penetrated A.D. where he admitted he did, and where defendant's DNA was found on the A.D.'s vaginal swab that was performed at the hospital. Additionally, the State provided overwhelming evidence that A.D. was unable to give knowing consent to the sexual penetration. A.D., Green, and Haragan all testified that A.D. was unable to stand on her own at the Hyatt and was slurring her words. Green testified that he had to assist A.D. into bed where she immediately fell asleep and remained asleep throughout the evening. Both A.D. and defendant testified that they had never met each other prior to that evening. A.D. and defendant did not speak to each other at the party. Haragan testified as he laid down after the party, he saw defendant go into the bedroom where A.D. was sleeping and close the door. Haragan did not give any testimony regarding A.D. summoning

7

defendant into the bedroom. A.D. testified that she woke up with defendant on top of her, and his penis brushing up against her vagina. The evidence gathered from the rape kit that was performed at the hospital identified defendant's DNA on A.D.'s vaginal swab.

¶ 28    The fact that defendant offered an alternate story at trial – that A.D. woke up after being completely passed out all evening, came to the door of the suite (without Haragan seeing her), seduced defendant despite not talking to him all evening and not speaking Spanish, decided to wake her boyfriend up after having sex with defendant to tell him she was raped, and called an ambulance to take her to the hospital in order to corroborate her own story – does not make the evidence presented in this case closely balanced. See *Adams*, 2012 IL 111168, ¶ 22 ("We think it clear from the foregoing that defendant's explanation of events, though not logically impossible, was highly improbable," and therefore evidence not closely balanced); *People v. Young*, 2013 IL App (2d) 120167, ¶ 31 (case not closely balanced where the defendant's evidence was merely her self-serving testimony that she had not admitted buying cocaine).

¶ 29    Additionally, we disagree with defendant's theory that this case was closely balanced because the jury took 14 hours to deliberate and submitted 5 questions to the court. Lengthy deliberations and jury notes do not require a finding that the evidence was closely balanced. *People v. Nugen*, 399 Ill. App. 3d 575, 584 (2010) ("We reject the general premise a lengthy deliberation necessarily means the evidence is closely balanced."); see also *People v. Walker*, 211 Ill. 2d 317, 342 (2004) ("the length of time a jury deliberates is not always an accurate indicator of whether the evidence was closely balanced."); *People v. Vasquez*, 368 Ill. App. 3d 241, 251 (2006) (despite jury note indicating deadlock, evidence not closely balanced where two officers testified they saw defendant with firearm, despite defense witness contradicting that testimony); *People v. Smith*, 341 Ill. App. 3d 530, 543 (2003) ("Given that we have found the

evidence against defendant to be overwhelming, the jury's deliberations alone do not indicate that the evidence was closely balanced."). Rather, lengthy jury deliberations and jury notes are merely considered as part of a commonsense analysis in the context of the totality of the evidence. *Nugen*, 399 Ill. App. 3d at 585. We have considered these factors and find that this case is not closely balanced. Accordingly, the plain error doctrine does not apply, and any claims regarding prior consistent statements have been forfeited by defendant.

¶ 30    Defendant's next argument on appeal is that his sentence is excessive. Defendant contends the trial court abused it discretion in sentencing him to eight years in prison. Defendant contends that the trial court did not give the proper weight during mitigation to his lack of criminal history, steady employment, and the reliance of his family on his income. The State responds that the trial court did not abuse its discretion where it weighed each of these factors and sentenced defendant to a term within the statutory range for a criminal sexual assault conviction. We agree with the State.

¶ 31    "The sentencing decisions of a trial court are entitled to great deference and weight because 'a trial judge is in a far better position than an appellate court to fashion an appropriate sentence' based on firsthand consideration of the defendant's credibility, demeanor, moral character, and other relevant factors." *People v. Weatherspoon*, 394 Ill. App. 3d 839, 862 (2009) (quoting *People v. Govea*, 299 Ill. App. 3d 76, 91 (1998)). "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as lack of a prior record, and the statute does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). A trial court is not required to give greater weight to the rehabilitative

potential of a defendant than to the seriousness of the offense. *Weatherspoon*, 394 Ill. App. 3d at 862.

¶ 32     A sentence within the statutory range is presumed proper. *People v. Phillip C.*, 346 Ill. App. 3d 822, 833 (2006). "When the circuit court hears mitigation evidence, it is assumed that it considered that evidence, absent some contrary indication other than the sentence imposed." *People v. Whitehead*, 171 Ill. App. 3d 900, 908 (1988). We will not reverse a sentence imposed by the trial court unless there has been an abuse of discretion, which is the most deferential standard of review. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. Here, defendant was convicted of criminal sexual sexual assault, a Class 1 felony, which carries a sentencing range of 4 to 15 years in prison. 720 ILCS 5/11-1.20 (West 2014).

¶ 33     At defendant's sentencing hearing, defense counsel presented evidence in mitigation that defendant had a child who he financially supported, defendant had been consistently employed, and defendant's criminal background consisted only of a 2003 DUI. The trial court noted that defendant "presents as an upstanding citizen," stating that he worked hard and supported his child. Defense counsel also argued that defendant was inebriated on the night in question, resulting in a lack of judgment. Nevertheless, the trial court had to weigh those mitigating factors against the seriousness of the crime. Defendant was convicted of penetrating A.D.'s vagina with his penis, while she was asleep and unable to consent. A.D. had to go to the hospital, submit to a rape kit and STD test, take a morning-after pill, and take antibiotics. We find that the trial court did not abuse its discretion in any way when it weighed the seriousness of the crime, the evidence in aggravation, and the evidence in mitigation when making its sentencing decision that was well within the sentencing range for this crime.

¶ 34    Finally, both parties agree that because of the recent amendment to Illinois Supreme Court Rule 472 (eff. May 17, 2019), defendant's claims concerning the Electronic Citation Fee and the State Police Operations Fee, should be remanded to the circuit court. Rule 472(a) provides that in criminal cases, the circuit court retains jurisdiction to correct sentencing errors relating to the following:

> "(1) Errors in the imposition or calculation of fines, fees, assessments, or costs;
>
> (2) Errors in the application of per diem credit against fines; (3) Errors in the calculation of presentence custody credit; and (4) Clerical errors in the written sentencing order or other part of the record resulting in a discrepancy between the record and the actual judgment of the court."

¶ 35    Rule 472 (c) states that "[n]o appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first ben raised in the circuit court." This rule was made effective on March 1, 2019.

¶ 36    However, on May 17, 2019, Rule 472 was amended to add section (e) which states, "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). Accordingly, defendant's claims concerning the Electronic Citation Fee and the State Police Operations Fee must be remanded to the circuit court for defendant to file an appropriate motion.

¶ 37                              CONCLUSION

¶ 38    For the foregoing reasons, we affirm the trial court's judgment and sentence, but remand only for defendant to file a motion for his fee claims.

¶ 39    Affirmed; remanded in part.